UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

KIMBERLY ANN SURCEY      )
                         )
V.                       )          NO. 2:12-CV-125
                         )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security  )

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation with respect to the Motion for Judgment on the Pleadings [Doc. 12] filed by the plaintiff, and the Motion for Summary Judgment [Doc. 14] filed by the defendant Commissioner. This is an action for judicial review of the administrative denial of plaintiff's application for disability insurance benefits under the Social Security Act following a hearing before an Administrative Law Judge ["ALJ"].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d

383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff is now 52 years of age, a person "approaching advanced age" under the applicable regulations and the Medical-Vocational Guidelines [the "Grid"], 20 CFR Ch. III, Appendix 2. She has a high school education and past relevant work experience as a nail technician (sedentary and semi-skilled) and as a sales manager (medium and skilled). (Tr. 38).

The medical evidence is summarized in the plaintiff's brief as follows:

> The plaintiff suffered from superventricular tachycardia, chest pain syndrome, and migraine disorder as early as 2001 (Tr. 197). Her migraines improved significantly on low-dose Inderal. She also had anxiety which had improved significantly on Xanax (Tr. 198). In 2003, she was diagnosed as suffering from abdominal pain syndrome (Tr. 202). In 2005, her treating physician, Dr. David Moulton, II, noted that the plaintiff was having daily migraine headaches, insomnia, and was anxious. He noted that she had a history of panic disorder and depression and Dr. Moulton noted that she had significant psychomotor agitation and tearfulness. He diagnosed intractable migraines, insomnia, acceleration of anxiety/depressive disorder with agoraphobia, and supraventricular tachycardia with recent palpitations (Tr. 207). In March 2005, Dr. Moulton noted that she had some severe anxiety (Tr. 209). In August 2006, he noted that she had intractable headaches (Tr. 212). In December 2007, he noted that she had fatigue with some symptoms of paresthesia (Tr. 215).
> In December 2007, Ms. Surcey presented to Dr. Moulton with severe back pain. He noted that she had back pain and hyperparathyroidism (Tr. 216). It was noted that x-rays showed some disk disease but her symptoms had resolved (Tr. 217). An x-ray done on December 17, 2007, showed advanced degenerative disk

disease at the L5-SI levels and findings suggesting findings of some degenerative facet arthropathy involving the lower lumbar spine (Tr. 231).

In June 2009, Medical Care LLC noted the plaintiff had depression which had begun years ago with severity being described as being moderate. That was not well controlled and had been aggravated by recent life stressors, chronic pain and lupus. She also had a rapid heart rate (Tr. 255).

An MRI of the lumbar spine performed on August 9, 2009, showed a small central to the left paracentral disk protrusion at L4-L5 causing mild central canal stenosis and mild left lateral recess stenosis. There was also a broad-based osteophyte at L5-S1 which caused some mild lateral recess stenosis bilaterally (Tr. 265).

In July 2009, the plaintiff came under the care of Pain Medicine Associates for low back pain which radiated into her bilateral lower extremities. The plaintiff was diagnosed as suffering from low back pain, lupus, myofascial pain, multiple sites, particularly her bilateral temples (Tr. 293). In August 2009, she was diagnosed as suffering from lumbar degenerative disk disease, possible L4 radiculopathy, and lumbar spinal stenosis. It was noted that an MRI showed multilevel degenerative disk disease most prominent at L4-S1 and that the plaintiff had neuroforaminal stenosis worse on the left side at the L4 but present bilaterally (Tr. 291). The plaintiff was diagnosed as suffering from lumbar radiculopathy (right leg pain), lumbar degenerative disk disease, especially L5-S1 and to a lesser degree L4-5 per MRI, lumbar disk displacement with a small central to left paracentral protrusion at L4-5 and a small broad based disk/osteophyte protrusion at L5-S1 per MRI, lumbosacral spondylosis without myelopathy (Tr. 288), cericalgia, daily headaches/migraines, diffuse myofascial pain, diffuse pain, systemic lupus eryethmatosus, anxiety, depression, generally weakness/chronic fatigue/malaise, [and] a history of parathyroid dysfunction. The plaintiff continued to work as a nail technician and had to cancel her days when she woke up with an exacerbation of pain. The plaintiff underwent an epidural steroid injection (Tr. 289). An EMG/NCV were within normal limits but the plaintiff was complaining of bilateral upper extremity pain in including numbness and parasthesia. She was diagnosed as suffering from cericalgia, cervical myofascial pain, lumbar radculopathy which was resolved with epidural steroid injection, lumbar degenerative disk disease and lumbar spondylosis without myelopathy (Tr. 285).

The plaintiff came under the care of Dr. David P. Lurie, a rheumatologist. He dianosed her as suffering from polyarthralgia, fatigue, hyerparathyrodism, a Vitamin D deficiency, circulatory anomaly, degenerative disk disease, osteoarthritis, and a ganglion of the dorsum of the left wrist (Tr. 313).

The plaintiff was evaluated by Ms. Kathy Birchfield, a clinical psychologist, on November 18, 2009. She noted that the plaintiff reported symptoms of depression related to her physical problems. She appeared to have no impairment intellectually and could understand and remember simple and complex work like procedures and information. However, the plaintiff had reported that ther medical issues had affected her ability to sustain concentration and persistence. It was unlikely that the

plaintiff would have any difficulty working in coordination or proximity to others and could maintain socially appropriate behavior and basic standards of neatness. She would be able to accept instructions and respond appropriately to a work environment. Ms. Birchfield diagnosed a depressive disorder, NOS, various medical issues and opined that ther current GAF was 50-55 (Tr. 307).

       The plaintiff was evaluated by Dr. Krish Purswani on December 2, 2009. He noted that she had neck and back pain with degenerative disk disease and lumbar degenerative joint disease. She also suffered from joint pain and headaches (Tr. 317). He further noted that she suffered from depression/anxiety (Tr. 318). He diagnosed the plaintiff as suffering from neck and back pain, degenerative disk disease, lumbar degenerative joint disease, joint pain, moderate knee crepitus, headaches/migraines by history, and depression and anxiety. He opined that the plaintiff could frequently lift 30 pounds one-half of the time and could stand for six hours a day and walk for six hours a day for a total of six hours in an eight hour day because of neck and back pain and joint pain and could sit for eight hours in an eight hour work day (Tr. 320). Dr. Purswani completed an assessment which opined that the plaintiff could continually lift up to ten pounds, could frequently lift up to 50 pounds, and could never lift more than that. He further stated that she could lift 30 poiunds one-half of the time (Tr. 331). He further opined that the plaintiff could sit for three hours at a time, could stand for one hour at a time, and could walk for 30 minutes for a total of eight hours sitting, six hours standing, or six hours walking. He opined that she could frequently use her right or left hand for reaching (Tr. 322), handling, fingering, feeling, or pushing or pulling (Tr. 323). He opined that she could never be around unprotected heights, could occaionally be around moving mechanical parts, and could frequently operate a motor vehicle (Tr. 324).

       Dr. Anna Gilbert diagnosed the plaintiff as suffering from severe lower back pain radiating into the thigh and right leg, fatigue/malaise, migraines, and anxiety and depression (Tr. 353).

       A state agency reviewing psychologist, Dr. Jayne F. Dubois, opined that the plaintiff's mental impairments were not severe (Tr. 354).

       A state agency reviewing physician, Dr. Carol A. Lemeh, opined that plaintiff could sit, stand or walk for six hours in an eight hour work day and had a limited ability to push and/or pull (Tr. 369). She further noted that ti was reasonable to conclude that the plaintiff's medically determinable impairments could cause some pain, but the level of severity and intensity of pain and functional limitations was not fully supported by the objective findings (Tr. 375).

       In August 2010, Dr. David Lurie, a rheumatologist, noted that the plaintiff had polyarthralgia (Tr. 381), fibromyalgia, myalgia, and dermatitis (Tr. 382).

[Doc. 13, pgs. 2-6].

On December 9, 2009, the administrative hearing was held. Plaintiff's brief accurately summarizes the plaintiff's testimony as follows:

> She testified that she had bad disks in her neck that were pinching her nerves. Her lower back pain made her have difficulty walking or standing and she culd not do that for more than 15 or 20 minutes. She could not sit for very long and every joint in her body hurt (Tr. 29). She also had tachycardia and took narcotic pain medication (Tr. 30). She had had steroid injections and did not believe that she could walk for two hours out of an eight hour work day (Tr. 31). In regards to sitting, she did not believe that she could sit for more than 20 to 30 minutes and that after that she had to move or lie down (Tr. 31-32). Her arms would go numb. She also had depression (Tr. 32). She had crying spells four to five times a week and her family physician prescribed her depression medication (Tr. 33). She had difficulty in sleeping (Tr. 34-35).

[Doc. 13, pgs. 6 and 7].

The ALJ then took the testimony of Ms. Donna Bardsley, a vocational expert ["VE"]. After she identified the vocational characteristics of plaintiff's past relevant work as a nail technician and sales manager, the ALJ asked her to "assume I find the claimant restricted to light work. Further asume I find that she could not perform any climbing of ladders, ropes or scaffolds, more than occasional climbing of ramps or stairs, stooping, kneeling, crouching or crawling. Mentally assume that I find that she is only able to maintain concentration and persistence for simple, routine, repetitive tasks, and assume that she is limited to work that requires no more than occasional interaction with the public. If I were to find that the claimant had those limitations, would she be capable of any of her past work?" Ms. Bardsley opined that plaintiff would not. (Tr. 38).

The ALJ then asked Ms. Bardsley if there were any other jobs available with those same limitations. She opined that such a person could perform the jobs of hand packager, with 500 in the region and 700,000 in the nation; sorter, with 450 in the region and 285,000 in the nation; assembler, with 500 in the region and 625,000 in the nation, and inspector, with 485 in the region and 390,000 in the nation. (Tr. 38). If she were limited as her testimony

5

indicated, she would not be capable of any performing any jobs. (Tr. 39).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine and depression. (Tr. 14). He summarized some of the medical evidence. He noted the consultative examination by Dr. Purswani, but made no mention of Dr. Purswani's limitations on the amount of time she could sit, stand or walk without changing positions. The ALJ did recount the objective findings of Dr. Purswani, such as lack of abnormalities in her gait, strength, etc., and her normal range of motion throughout the body. He noted that "Dr. Purswani concluded that the claimant was capable of performing light work." (Tr. 15).

The ALJ then discussed the consultative psychological examination of Ms. Birchfield, accurately describing her favorable impressions of plaintiff before stating "[s]omewhat incongruously, however, Ms. Birchfield assigned a global assessment of functioning (GAF) OF 50 to 55, consistent with moderate impairment." (Tr. 15).

He then went through the process of characterizing his findings regarding the severity of her mental impairment. He found she had mild limitations in respect to activities of daily living; moderate limitations in concentration, persistence and pace, and no episodes of decompensation. He gave greater weight to Ms. Birchfield, than to the non-examining state agency psychologists, who found no more than mild limitations in any mental health area. (Tr. 16).

The ALJ found that the plaintiff had the residual functional capacity for "light work, except that she is to avoid more than occasional stooping, kneeling, crouching, crawling or climbing of stairs or ramps; she is to avoid all climbing of ropes, ladders or scaffolds; and

she is restricted to simple, routine, repetitive tasks involving no more than occasional interaction with the general public." (Tr. 16). He then discussed the plaintiff's subjective complaints related by her at the hearing. While he found that her conditions could cause some symptoms, her statements about the intensity, persistence and limiting effects of those symptoms were not fully credible to the extent they were inconsistent with his RFC finding. In making this determination, he noted the strength and range of motion findings of Dr. Purswani and clinical findings of Ms. Birchfield, again noting her low GAF opinion of 50-55. He stated that he gave little weight to the state agency physicians and psychologists, who found she perform the full range of medium work without significant mental limitations. (Tr. 17).

While he found she could not perform any of her past relevant work within the confines of his RFC finding, the ALJ found, based upon Ms. Bardsley's testimony, that there were a significant number of jobs which the plaintiff could perform in the national economy. Accordingly, he found that she was not disabled. (Tr. 18-19).

Plaintiff asserts that the ALJ's hypothetical question to the VE, from which flowed his finding that the plaintiff was not disabled, was "defective" as to both the plaintiff's physical and mental impairments. Plaintiff also argues that the ALJ's finding that she was not completely credible about the extent to which her impairments affected her ability to work was unsupported by the evidence.

Physically, there is no dispute that there is abundant substantial evidence that the plaintiff can stand and walk for six hours, and sit up to eight hours, in a standard eight-hour workday. However, Dr. Purswani, while finding she could meet these hourly totals, limited

7

the plaintiff from sitting for more than three hours at a time, standing for more than one hour at a time, or walking for more than thirty minutes at a time. (Tr. 322). Light work "requires a good deal of walking or standing...," and "to be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 CFR §404.1567(b). Plaintiff thus asserts that the question to VE was inadequate because it did not include an option for her to change positions between sitting, walking and standing at her discretion. From a mental impairment aspect, plaintiff argues that Ms. Birchfield's GAF finding of 50 to 55 indicates at least mild to moderate impairments, with a GAF of 50 indicating serious symptoms which the ALJ's restrictions in his RFC finding and in his question to the VE do not adequately cover. As to both Dr. Purswani and Ms. Birchfield, the ALJ assigned great weight.

Regarding the ALJ's failure to include a sit/stand option, as suggested by Dr. Purswani's report, the state agency reviewing physician, Dr. Carol Lemeh, reviewed all of the medical records, including the report of Dr. Purswani, and opined that the plaintiff did not have a need to "periodically alternate sitting and standing to relieve pain or discomfort." (Tr. 369). In the "additional comments" section of her report, she recounted the plaintiff's activities of daily living. She then stated "MA of Dr. Purswani is too restrictive for frequent lift/carry and refuted by his own exam findings of (general range of motion), no evidence of radiculopathy and non focal neuro findings." In conclusion, Dr. Lemeh opined that "physical impairments combined w/ pain considered would reduce the RFC to 50/25/6/6 w/ postural limit to frequent." (Tr. 376). Thus, while Dr. Lemeh did not directly discuss her disagreement with Dr. Purswani regarding the need for plaintiff to frequently alternate

8

between sitting and standing/walking in the explanatory portion of her report, her disagreement was clear in her own assessment.

The ALJ noted the objective findings regarding gait, strength, etc., (Tr. 15) contained in Dr. Purswani's report, and noted Dr. Purswani's examination was "fairly benign" (Tr. 17).

The ALJ did not state in his report that he was disagreeing with Dr. Purswani regarding a sit/stand option, or in any other respect. However, a failure not to do so on the part of an ALJ is not reversible error, as it could be argued if Dr. Purswani were a treating source under *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). As stated by the Sixth Circuit in *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876, "[i]n the absence of treating source status for these doctors (consultative examiners), we do not reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not accepting their reports." The ALJ explained his reasoning for his RFC, even if he did not go into detail about a sit/stand option. Also, the report of Dr. Lemeh constituted substantial evidence that the plaintiff's RFC did not require a sit/stand option. In appropriate circumstances, a state agency physician's opinion can have deference even over the opinion of a treating source. *Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640 (6th Cir. 2006).

With regards to the plaintiff's mental impairments, Ms. Birchfield's report was extremely favorable to the Commissioner. (Tr. 307). The only negative aspect was her GAF assessment. Otherwise, her examination and assessment did not indicate a severe mental impairment. The state agency psychologist, Dr. Dubois, found nothing more than a mild limitation in maintaining social functioning and in maintaining concentration, persistence and pace. (Tr. 364). Dr. Dubois also said in her narrative explanation that "[t]otality of evidence

9

is suggestive of claimant currently experiencing mild limitations from a (mental health) standpoint." (Tr. 366).

Likewise, there is nothing to suggest that the ALJ erred in his credibility finding. He did not totally disbelieve the plaintiff, but as the finder of fact he did not find her fully credible regarding her subjective complaints. The existence of substantial evidence to support his RFC finding likewise supports his finding in this regard.

There is substantial evidence to support the ALJ's RFC assessment, his question to the VE, his credibility determination, and his finding that the plaintiff was not disabled. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 12] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 14] be GRANTED.[1]

Respectfully submitted,

 s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).